## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| VICTOR L. COLEMAN,<br><br>        Plaintiffs,<br><br>    vs.<br><br>COMMERCIAL FURNITURE<br>SERVICES, LLC;<br>JIM MCMENIMEN; and<br>CRAIG GOOKIN,<br><br>        Defendants. | <br><br><br><br>CIV. ACTION NO._____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Victor L. Coleman, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Commercial Furniture Services, LLC, Jim McMenimen, and Craig Gookin (*collectively*, "Defendants"), respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

### 1.

Plaintiff brings the above-captioned case pursuant to 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid overtime wages and retaliation, as well as the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

### 2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

### 3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

## II.  PARTIES

4.

Plaintiff Victor L. Coleman ("Coleman") is a fifty-six (56) year old African-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

5.

At all relevant times, Coleman was an "employee" of Defendant Commercial Furniture Services, LLC, within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

6.

Defendant Commercial Furniture Services, LLC, ("Commercial Furniture") is a foreign limited liability company providing office furniture installation, asset management, and logistical services affecting inter-state commerce through its facilities in Georgia and Tennessee and subject to the Court's jurisdiction with a principal office located in Knoxville, Tennessee.

7.

Commercial Furniture operates a facility located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071 ("Peachtree Corners Location"), where the conduct forming the basis of the above-captioned complaint occurred.

8.

Commercial Furniture is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203, with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

9.

Commercial Furniture may be served with process through Cynthia Jenkins, Registered Agent, 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

10.

Defendant Jim McMenimen ("McMenimen") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

11.

McMenimen is and was, at all relevant times, Commercial Furniture's Owner and Managing Member, involved in the day-to-day operation of Commercial Furniture and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

12.

At all relevant times, McMenimen supervised Coleman and participated in the unlawful and tortious conduct described herein.

13.

McMenimen may be served with process at Commercial Furniture's Peachtree Corners Location located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

14.

Defendant Craig Gookin ("Gookin") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

15.

Gookin is and was, at all relevant times, Commercial Furniture's Georgia Field Operations Manager, involved in the day-to-day operation of Commercial Furniture's Peachtree Corners Location, and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

16.

At all relevant times, Gookin supervised Coleman and participated in the unlawful and tortious conduct described herein.

17.

Gookin may be served with process at Commercial Furniture's Peachtree Corners Location located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

### III.  FACTUAL ALLEGATIONS

18.

Plaintiff re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

19.

Commercial Furniture is engaged in the business of providing office furniture installation, asset management, and other logistical services related to the onsite creation of workspaces in the Southeast United States from the Peachtree Corners Location.

20.

Beginning on or about December 23, 2018, Coleman began working for Commercial Furniture as a Commercial Installer earning $18.00 per hour. Unbeknownst to Coleman, Commercial Furniture often paid newly-hired Commercial Installers higher hourly rates.  For example, when Marcus Arnold ("Arnold") began working as a Commercial Installer in or about April 2019, Commercial Furniture paid Arnold $19.50 per hour.

21.

When commencing employment with Commercial Furniture, Coleman inquired about overtime hours and compensation, however, Gookin and others responded that Commercial Furniture only paid straight hours, no time-and-a-half for overtime hours.

22.

As a Commercial Installer, Coleman was responsible for the efficient installation and assembly of office furniture and workspaces at client facilities throughout the region.

23.

During the course of employment with Commercial Furniture, Coleman diligently and professionally performed all duties and assigned tasks.

24.

While employed by Commercial Furniture, Coleman's work schedule varied on a daily basis depending on the needs of Commercial Furniture's clients.  In the evenings no earlier than 6:00PM, but often much later into the night, Gookin would send Commercial Installers an e-mail with the work schedule for the next day. However, because Commercial Furniture provides onsite services to clients, Coleman and other Installers were often required to work out-of-town with little or no prior notice.  When travelling to out-of-town to worksites, Defendants required Coleman and the other Installers to arrive at the Peachtree Corners Location or the specified worksite at approximately 5:00AM the following day—often only hours after receiving e-mail notice of the need to travel.  Simply put, Coleman's work schedule varied on a daily basis with little advance notice.

25.

Although the hours worked by Commercial Furniture employees were initially recorded on timesheets, during the course of Coleman's employment, Commercial Furniture began requiring employees to clock-in and clock-out using an electronic system.

26.

Coleman consistently worked in excess of forty (40) hours in a given workweek while employed by Commercial Furniture as a Commercial Installer.  In fact, on average, Coleman worked in excess of 47 hours per week while employed as a Commercial Installer for Commercial Furniture.  However, Commercial Furniture refused and/or failed to pay Coleman overtime at the FLSA-mandated rate for hours worked over forty (40) in a given workweek.

27.

Because Commercial Furniture failed and refused to compensate at the FLSA-mandated rate, Coleman and other Commercial Installers repeatedly complained to Gookin and other Commercial Furniture employees.  In fact, on several occasions, Arnold complained to Gookin about Commercial Furniture's failure to compensate at the FLSA-mandated rate.  Although Gookin often responded to complaints of Commercial Installers by stating, "We're working on it," Commercial Furniture

never compensated Coleman at the FLSA-mandated rate for hours worked in excess to forty (40) hours in certain workweeks.  Moreover, in response to one of Arnold's complaints about the failure to compensate at the FLSA-mandated rate in or about May 2020, Gookin responded, "If you don't like it, leave."

28.

Similarly, while at the warehouse and at worksites, Coleman often discussed the lack of time-and-a-half for hour worked in excess of forty (40) hours in a given workweek.  Although present during many of these discussions, Defendants never acknowledged or addressed these concerns and complaints.  Rather, Defendants continued to compensate Coleman at the regular hourly rate for hours worked in excess of forty (40) hours in given workweeks.

29.

Due to Defendants' erratic and draconian scheduling practices and procedures, Coleman suffered extreme and severe distress as it became increasingly difficult for Coleman to continue performing diligently and professionally while maintaining his personal and familial obligations.

30.

Although generally scheduled to work eight (8) hours per day Monday through Friday, whenever a project was not completed by the close of business, Defendants required Coleman and other Commercial Installers to continue working until the project was complete.  Because Coleman was responsible for childcare, Defendants' scheduling practices interfered with Coleman's family obligations and created tension.  Whenever Coleman would complain about being forced to work overtime without compensation in compliance with the FLSA, McMenimen would threaten to suspend and/or give Coleman "days off" if Coleman left the worksite to attend to his children.  Defendants repeatedly threatened Coleman and other Commercial Installers with reprimands, suspensions, and/or termination whenever they expressed concerns or complaints related to Defendants' employment practices.

31.

Because of Commercial Furniture's scheduling practices, Coleman and other Commercial Installers repeatedly complained about the last-minute notice concerning out-of-town assignments.  Whenever Coleman complained about Defendants' last-minute scheduling, Defendants would state that, if Coleman did not report, Coleman would not be placed on the schedule for a couple of days.  Similarly,

although Arnold would complain, "I have kids.  I need to have more notice than that," Gookin continued to the practice of eleventh-hour out-of-town assignments.

32.

Whenever Coleman and other Commercial Installers professionally complained about scheduling or unpaid wages, Gookin created a tense and stressful workplace environment.   For example, Gookin would shut down, cease communicating with any complaining Commercial Installer, and isolate/separate the complaining Commercial Installer for weeks.   Even worse, Gookin would summarily and punitively remove complaining Commercial Installers from Commercial Furniture's work schedule, resulting in the loss of income.

33.

On or about January 17, 2020, Arnold contacted an attorney to discuss legal remedies associated with Defendants' failure to pay FLSA-mandated overtime wages, the extreme/severe stress caused by Defendants' scheduling practices, and Defendants unlawful and unfair employment practices.

34.

Following communication with legal counsel, Arnold gave legal counsel's contact information to co-workers, including Coleman.  Approximately three (3)

weeks later, Defendants completely removed Arnold from the work schedule.  Since that time, Defendants have not scheduled Arnold to work as a Commercial Installer.

35.

Similarly, following Coleman's work-related injury, Coleman stated that, if Defendants did not properly address the injury, Coleman would also pursue FLSA claims for hours worked in excess of forty (40) hours in each workweek.  As such, several co-workers suggested that Coleman communicate with Arnold concerning remedies associated with Defendants' failure to pay FLSA-mandated overtime wages, the extreme/severe stress caused by Defendants' scheduling practices, and Defendants unlawful and unfair employment practices.  Although Coleman inquired about, and Gookin stated that he would follow-up with Coleman, concerning light-duty work assignments, Coleman has not been scheduled to work for Commercial Furniture since July 2020.

36.

While Coleman worked as a Commercial Installer, Commercial Furniture required, and was aware that, Coleman worked more than forty (40) hours per workweek.

37.

Rather than compensate Coleman at the FLSA-mandated rate for hours worked in excess of forty (40) hours in each workweek, Commercial Furniture compensated Coleman at his regular straight-time rates for hours worked in excess of forty (40) ours in each workweek.

38.

Commercial Furniture's failure to properly compensate Coleman at the FLSA-mandated rate was knowing and willful.

39.

Commercial Furniture has an account with United Parcel Service ("UPS"), requiring the maintenance of Installers at UPS facilities.   In 2019 while invoicing/billing UPS at the FLSA-mandated rate for hours worked in excess of forty (40) hours during workweeks by the Installers, Warren and Greg, Commercial Furniture failed to compensate the Installers at the FLSA-mandated rate.   After learning of the failure to compensate the Installers at the FLSA-mandated rate, UPS threatened to, among other things, terminate the account before Commercial Furniture agreed to take remedial action, including, but not limited to, back-pay at the FLSA-mandated rate to the Installers.   Angered, Gookin and McMenimen cursed at the Installers for disclosing the unlawful employment practices.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY MANDATED WAGES
### IN VIOLATION OF THE FLSA
**(Against Defendant Commercial Furniture)**

40.

Plaintiff re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

41.

The FLSA requires, with certain exceptions that are inapplicable to the above-captioned case, that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek.

42.

During the relevant period, Coleman was an employee of Commercial Furniture within the meaning of the FLSA, 29 U.S.C. § 203.

43.

During the relevant period, the relationship between Coleman and Commercial Furniture was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

44.

During the relevant time period, Coleman regularly worked more than forty (40) hours per workweek and, therefore, Coleman entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

45.

However, during the course of Coleman's employment, Commercial Furniture failed to compensate Coleman for the hours worked in excess of forty (40) hours per workweek.

46.

Commercial Furniture knew, or showed reckless disregard for the fact, that Commercial Furniture failed to pay Coleman's overtime compensation in violation of the FLSA.

47.

Commercial Furniture's actions, policies, and/or practices described herein violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Coleman at the mandated overtime rate.

48.

Commercial Furniture's conduct in violation of the FLSA was both willful and in bad faith.

49.

As the direct and proximate result of Commercial Furniture's intentional, willful, and unlawful conduct when refusing to pay Coleman overtime compensation for the overtime hours worked, Coleman has suffered loss of income and other damages.

50.

Pursuant to the FLSA, 29 U.S.C. § 216, Coleman is entitled to unpaid overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

**COUNT II**
**RETALIATION**
**IN VIOLATION OF THE FLSA**
**(Against All Defendants)**

51.

Plaintiff re-alleges and incorporates by reference each of the foregoing Paragraphs as if fully restated herein.

52.

The FLSA prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA.

53.

During the relevant period, the relationship between Coleman and Commercial Furniture was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Coleman by Defendants.

54.

Defendants unlawfully and knowingly failed to pay the FLSA-mandated rates to Coleman for hours worked in excess of forty (40) hours during certain workweeks.

55.

Coleman and other Commercial Installers repeatedly complained to Commercial Furniture employees, including, but not limited to, Gookin, about unlawful employment practices in violation of the FLSA.

56.

When Defendants failed to remedy the complaints about, *inter alia*, the failure to compensate pursuant to the FLSA, Coleman communicated with other Commercial Installers, and sought legal representation, to remedy the FLSA violations.

57.

Following the complaints concerning unlawful employment practices, as well as communications with other Commercial Installers concerning FLSA remedies, Defendants took adverse employment actions against Coleman, including, but not limited to, ceasing professional communications, isolating Coleman from colleagues and co-workers, reducing compensation, removing Coleman from the work schedule, and effectively terminating Coleman's employment without cause in violation of, *inter alia*, the FLSA.

58.

The effect of Defendants' actions has been to suspend and deprive Coleman of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Coleman because of the exercise of Coleman's Federally-protected rights

59.

Defendants' adverse employment actions against Coleman constitute unlawful retaliation in violation of, *inter alia*, the FLSA.

60.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Coleman harm and/or were committed with reckless and wanton disregard of the harm caused to Coleman in derogation of Coleman's Federally-protected rights.

61.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

62.

The retaliation to which Coleman was subjected by Defendants entitles Coleman to all appropriate relief afforded under the law.

63.

As a result of Defendants' intentional and unlawful conduct, Coleman has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

64.

Defendants' actions with respect to Coleman have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Coleman is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

<u>**COUNT III:**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
<u>**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**</u>
**(Against All Defendants)**

65.

Plaintiff re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

66.

Defendants' statements, conduct, and behavior towards Coleman were intentional and reckless, extreme and outrageous, causing Coleman severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

67.

Defendants' statements, conduct, and behavior towards Coleman demonstrate, among other things, a "retaliatory animus."

68.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Coleman, as well as Coleman's income and/or livelihood while responsible for the care of children.

69.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Coleman, Defendants knew that Coleman was caring for children and dependent upon the income received from Commercial Furniture.

70.

Defendants engaged in erratic and draconian scheduling practices that were known to cause severe distress, ignored Coleman's reasonable requests for relief, subjected Coleman to unsavory and less-desirable worksites, threatened to punish Coleman, reduced Coleman's compensation and effectively terminated employment when Coleman sought legal remedies related to Defendants' unlawful employment practices, and engaged in other unfair and unlawful treatment.

71.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Coleman.

72.

As a result of Defendants' conduct, Coleman has and will continue to suffer severe emotional distress and other damages for which Coleman is entitled to recover.

**COUNT IV**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF THE LAW OF THE STATE OF GEORGIA**
**(Against Defendants Commercial Furniture and McMenimen)**

73.

Plaintiff re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

74.

As a result of the actions taken by Defendants Commercial Furniture and McMenimen, Coleman suffered, among other things, unpaid wages, retaliation, and severe emotional distress.

75.

Defendants Commercial Furniture and McMenimen owed Coleman a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in unlawful or tortious conduct.

76.

By negligently retaining and supervising its employees, including Gookin, Defendants Commercial Furniture and McMenimen breached their duty to hire, retain, and supervise employees who would lawfully behave.

77.

Defendants Commercial Furniture and McMenimen knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including Gookin, to engage in unlawful conduct against Coleman.

78.

By failing to engage in any corrective or remedial action, Defendants Commercial Furniture and McMenimen ratified, condoned, and/or adopted its employees' unlawful conduct.

79.

As a direct and proximate result of Defendants Commercial Furniture's and McMenimen's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including Gookin, Coleman suffered damages.

80.

Defendants Commercial Furniture's and McMenimen's negligent conduct entitles Coleman to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Coleman respectfully demand a trial by jury and request the following relief:

(a) That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b) That the Court grant declaratory judgment that Coleman's rights under, among other laws, the FLSA were violated;

(c) That the Court award Coleman compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d) That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e) That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the FLSA;

(g)    That the Court award punitive damages in an amount reasonable and

commensurate with the harm done and calculated to be sufficient to

deter such future conduct;

(h)    That the Court award pre-judgment interest on any monetary award;

(i)    That the Court grant a trial by jury as to all triable issues of fact; and

(j)    Further and additional relief as may be just and appropriate.

Respectfully submitted, this 30th day of December, 2020.

MOLDEN & ASSOCIATES

 */s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Victor Coleman*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| VICTOR L. COLEMAN, | |
| Plaintiff, | |
| vs. | |
| | CIV. ACTION NO._____ |
| COMMERCIAL FURNITURE SERVICES, LLC; JIM MCMENIMEN; and CRAIG GOOKIN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>LOCAL RULE AND SERVICE CERTIFICATION</u>

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 30th day of December, 2020.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406